**SHERROD et ux. v. CITY NAT. BANK OF WICHITA FALLS. (No. 2803.)**

Court of Civil Appeals of Texas. Amarillo. March 23, 1927.

Rehearing Denied May 4, 1927.

**1. Fraudulent conveyances ⬤288—Interlocutory judgment against grantor, rendered subsequent to conveyance attacked as fraudulent, on indebtedness existing at time of conveyance, held admissible.**

In suit to cancel deed as fraudulent conveyance, interlocutory judgment against grantor, rendered subsequent to conveyance, but upon indebtedness existing at that time, *held* admissible on issue of grantor's solvency.

**2. Appeal and error ⬤1052(5)—Admission of judgments against grantor rendered subsequent to conveyance attacked as fraudulent held harmless, where indebtedness existed at that time.**

In suit to cancel deed as fraudulent conveyance, admission in evidence of judgments against grantor rendered subsequent to date of conveyance *held* harmless, where it appeared that judgments were upon indebtedness existing at time of conveyance.

**3. Fraudulent conveyances ⬤286(1)—In suit to set aside fraudulent conveyance, great latitude is allowed in introduction of evidence of fraud.**

In suit to set aside fraudulent conveyance, great latitude is allowed in introduction of evidence on question of fraud.

**4. Fraudulent conveyances ⬤271(3)—Creditor who assails conveyance of debtor for fraud has burden of proof.**

Creditor who assails a conveyance of his debtor for fraud has burden of proof.

**5. Fraudulent conveyances ⬤272—Where prima facie showing of fraud appears in suit to set aside fraudulent conveyance, burden is upon grantee to show solvency of grantor (Vernon's Ann. Civ. St. 1925, art. 3996).**

In suit to set aside fraudulent conveyance where there is prima facie showing of fraud, under Vernon's Ann. Civ. St. 1925, art. 3996, making void conveyances intended to defraud creditors, burden is upon grantee to show that grantor had sufficient property to pay all his debts.

**6. Fraudulent conveyances ⬤288—In suit to set aside fraudulent conveyance, value of grantor's property subsequent to conveyance is inadmissible on issue of solvency.**

In suit to set aside fraudulent conveyance, value of grantor's property at time subsequent to execution of deed is inadmissible on issue of grantor's solvency.

**7. Appeal and error ⬤1050(1)—In suit to set aside fraudulent conveyance, showing value of grantor's property subsequent to conveyance held harmless, where value had not changed.**

In suit to set aside fraudulent conveyance, evidence of value of grantor's property at time subsequent to execution of deed *held* harmless, in view of other evidence showing that value was same then as when conveyance was made.

**8. Evidence ⬤121(1) — Hearsay testimony held admissible as part of res gestæ, where witness participated in transaction about which statement was made.**

Hearsay testimony *held* admissible as part of res gestæ, where it appeared that witness and person making statement were both present and participated in transaction about which statement was made.

**9. New trial ⬤29—Reading to jury materially inaccurate copy of testimony, by counsel, held ground for new trial, although no fraud appeared.**

Where counsel read to jury from inaccurate copy of testimony, although no fraud appeared, difference between facts presented to jury and testified to by witnesses was so material as to be ground for new trial.

**10. Trial ⬤350(3)—In suit to set aside fraudulent conveyance, refusal of issue as to grantor's ability to pay debts held error.**

In suit to set aside fraudulent conveyance, question of grantor's solvency at time having been raised by pleadings and evidence, refusal of issue as to grantor's ownership of property of value sufficient to pay debts at time of conveyance was error.

**11. Chattel mortgages ⬤264—Value of personal property sold under power in mortgage held conclusively fixed, for time of sale, by highest bid.**

Where personal property is regularly sold under power of sale in mortgage, price paid by highest bidder, in absence of fraud, conclusively fixes value of property at time of sale.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

⬤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Suit by the City National Bank of Wichita Falls against Eugene Sherrod and wife. From a judgment for plaintiff, defendants appeal. Reversed and remanded.

Fitzgerald & Hatchitt, of Wichita Falls, for appellants.

Bullington, Boone, Humphrey & King, of Wichita Falls, for appellee.

HALL, C. J. The appellee bank sued appellant Sherrod to recover upon two promissory notes, one dated September 28, 1923, in the sum of $19,544.68, with interest from date at 10 per cent. and 10 per cent. attorney's fees. This note bore a credit of $8,000, dated January 5, 1924. The other note was dated November 14, 1923, in the sum of $520.66, also providing for 10 per cent. attorney's fees and 10 per cent. interest from date. The bank also sought to set aside and cancel a certain deed made by Sherrod to his wife on October 23, 1923, conveying about 1,920 acres of land located in Gaines and Andrews counties, alleging that the deed was without consideration and was made by Sherrod to his wife for the purpose of hindering, delaying, and defrauding his creditors, and that at the time of its execution Sherrod was insolvent. Mrs. Sherrod was made a party defendant.

Sherrod answered by general demurrer and general denial, denying the allegations charging that the deed was a fraudulent conveyance, and alleged his solvency at the time of its execution. He further alleged that the deed to his wife was made in good faith in payment of certain indebtedness due her for personal services in the sum of $15,000.

The case was tried at the April term, 1925, and resulted in a mistrial, the jury failing to find whether, at the date of the execution of the deed, Sherrod had sufficient property over and above his exemptions to pay his debts, and whether the deed was made with a fraudulent intent. The case was again tried at the February term, 1926, and two issues were submitted to the jury, as follows:

"1. What was the cash market value of the herd of cattle owned by Eugene Sherrod in Gaines and Andrews counties, Tex., on October 23, 1923?" (Answered, $10,410.)

"2. Was the conveyance made by Eugene Sherrod on October 23, 1923, to his wife, Virginia Sherrod, made with intent to hinder, delay, and defraud the City National Bank of Wichita Falls, Tex., plaintiff herein?" (This was answered in the affirmative.)

Based upon these answers, the court decreed that the amount of the indebtedness owing by Sherrod on October 23, 1923, was $28,147.97, and that all the property owned and held by him, including his cattle and excepting the land deeded to his wife, was as follows: 15 horses and mules, valued at $1,500; cash and bills receivable, $1,000; value of lands other than that in controversy, $2,000; making a total value of his assets, ex-

clusive of his lands and homestead exemptions, in addition to the cattle, $4,500. The court further found that under the evidence and verdict of the jury, Sherrod was insolvent October 23, 1923, and that the deed to his wife was made with intent to delay, hinder, and defraud the City National Bank, and was void. The judgment cancels the deed and subjects the land to the payment of the bank's debt, awarding execution.

[1] Upon the issue of solvency the bank introduced an interlocutory judgment, rendered June 17, 1925, in favor of the bank against Sherrod in this case. This was objected to upon the ground that the judgment was rendered long after the date of the transfer of the property, and did not show the amount of his indebtedness at the time of the transfer, as the judgment was dated 20 months after October 23, 1923.

[2, 3] The second proposition urges as error the action of the court in permitting the bank to introduce another judgment rendered in cause No. 17314 in favor of the Langford Investment Company against Sherrod, dated September 8, 1925, in the sum of $13,385.18. Bills of exception were taken to the action of the court in admitting these two judgments in evidence. Both bills are qualified by the court with the statement that the notes upon which said judgments were based were also introduced in evidence by the bank. The notes introduced in evidence represented indebtedness which existed at the time of the transfer by Sherrod to his wife, and under the court's qualification of the bills we think the error, if any, is harmless. However, we think the interlocutory judgment was admissible, at least against Eugene Sherrod on the issue of his solvency. However, its weight as evidence was subject to any explanation he could make of it. The Langford judgment was a default judgment against Sherrod but was final upon which execution had issued, and because it was a judicial ascertainment of the amount then due upon an indebtedness which existed at the date of the deed, we are not prepared to hold that there was reversible error, even if the burden rested upon the bank to prove Sherrod's insolvency. Cone v. Belcher et al., 57 Tex. Civ. App. 493, 124 S. W. 149; Stolte v. Karren (Tex. Civ. App.) 191 S. W. 600. Great latitude is allowed in the introduction of evidence on the question of fraud. Burnham v. Logan, 88 Tex. 1, 29 S. W. 1067; Quarles v. Eaton-Blewett Co. (Tex. Civ. App.) 210 S. W. 599; 27 C. J. 812, 813.

[4-7] While the general rule is that a creditor who assails a conveyance of his debtor for fraud has the burden of proof, a well-recognized exception to the rule is that where there is a prima facie showing of fraud, the burden, under the language of Vernon's Ann. Texas St. art. 3996, is upon the grantee to show that the grantor had

sufficient property to pay all of his indebtedness. Snodgrass v. Brownfield State Bank (Tex. Civ. App.) 251 S. W. 567; Collett v. Houston, etc., Co. (Tex. Civ. App.) 186 S. W. 232; 27 C. J. 796, § 724. The proof was sufficient to show fraudulent intent in the execution of the instrument, and the jury so found, and when fraud is shown in a conveyance of this character the effect of the statute is to declare it void, and it is for this reason that the burden of showing the solvency of the fraudulent grantor shifts to the fraudulent grantee. In his testimony, Sherrod denied that he was insolvent at the time he executed the deed, and further denied that it was executed with a fraudulent intent. As bearing upon the issue of insolvency, the market value of the cattle, if they had a market value, and, if not, their intrinsic value at a time subsequent to the date of the execution of the deed, is generally inadmissible. Moore v. Temple Grocery Co. (Tex. Civ. App.) 43 S. W. 843; Oppenheimer v. Halff, 68 Tex. 409, 4 S. W. 562; Halff v. Goldfrank (Tex. Civ. App.) 49 S. W. 1095. But in view of other evidence showing that this market value at the time of the sale of the cattle was the same as their market value at the date of the deed, the admission of the evidence is harmless.

[8] By the fourth proposition it is insisted that evidence of statements made by Hood as to the number of the cattle on hand at a certain date were inadmissible as against Sherrod. These statements were made just after a shipment of part of the cattle had been made and the remainder had been counted by Hood. Jones testified that he heard Hood say that there were 380 cattle left after the shipment. This testimony by Jones as to statements made by Hood was hearsay. It also appears that Jones was present when the count was made. The court qualified the bill with the statement that the testimony showed that Hood and Jones were both employed by Sherrod at the time of this conversation, and that the statement was admitted because the evidence showed that both Jones and Hood were working for Sherrod and it was admitted as part of the res gestæ. According to the holding in the case of Farmers' Mill & Elevator Co. v. Hodges (Tex. Com. App.) 260 S. W. 166, the testimony was admissible.

[9] It appears that upon the trial, counsel for plaintiff stated to the court and opposing counsel that the original and cross-interrogatories propounded to the witness Richards had been misplaced, and could not be found, but that he had in his files a copy of the cross-interrogatories and answers thereto which he desired to read. This statement was accepted by counsel for Sherrod as being true and no objection was urged on that account. After the case was submitted to the jury, counsel for Sherrod discovered that the answers were not correct copies of answers made by the witness to the original interrogatories. As set out in the record, there are material differences between the answers as made and the answers as read by plaintiff's counsel from his purported copy. This was set up as a ground for new trial. It is not charged that plaintiff's counsel acted fraudulently or corruptly in the matter, and there is nothing in the record to sustain such a charge if made, but through the inadvertence of some one there is such a wide difference between the facts as presented to the jury and the facts as testified to by the witness that we think material injury resulted therefrom. We think the court erred in not granting a new trial upon this ground set up in the motion.

[10] The pleadings and evidence raise the question as to whether or not Sherrod was solvent at the time he made the deed to his wife, and the evidence is conflicting as to whether he had enough property at that time, over and above his exemptions, to pay his indebtedness. As shown, the court only submitted to the jury upon this issue the question of the market value of the cattle owned by Sherrod. His counsel requested the court to submit this issue:

"Did the defendant Eugene Sherrod, at the time he deeded the 1,440 acres of land to his wife, have sufficient property and money, over and above his exemptions, to pay his debts?"

This issue was refused. We think this is reversible error. In determining the question of Sherrod's insolvency, he had the right to have the jury pass upon the matter, and to take into consideration the value of all of his property. While there was very little contention with reference to the amount of his indebtedness, the jury should have been permitted to determine that fact.

One ground of the motion for new trial was newly discovered evidence. The court did not err in overruling this ground of the motion because the proper diligence was not shown.

[11] Sherrod insisted that the cattle were worth more than $8,000 at the time they were sold under the mortgage by the bank. There is no allegation that the sale was irregularly made, or was tainted with fraud or unfairness. The rule is that where personal property is regularly sold under a power of sale in the mortgage, the price paid by the highest bidder will, in the absence of fraud, conclusively fix the value of the property at the time of the sale, and is the sum to be credited upon the debt. 2 Cobbey, Chat. Mortgs. § 941; 11 C. J. 711, § 516.

For the errors pointed out, the judgment is reversed, and the cause is remanded.